IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA MILLIGAN, *by his legal guardian and conservator, Susan Thomas*,

                Plaintiff,

   v.

ROCK ON THE RIVER, INC., SCOTT SHECKLER,
JILL SHECKLER, SHECKLER MANAGEMENT, INC.,
and COUNTRY ON THE RIVER, INC.,

                Defendants,

   and

ROCK ON THE RIVER, INC., SCOTT SHECKLER,
JILL SHECKLER, SHECKLER MANAGEMENT, INC.,
and COUNTRY ON THE RIVER, INC.,

                Third-Party Plaintiffs,

   v.

ANTHONY WILLIAM RUNDE,

                Third-Party Defendant.

OPINION & ORDER

16-cv-498-jdp

---

      Plaintiff Joshua Milligan was assaulted while attending "Rock on the River," a music festival in Bridgeport, Wisconsin. Milligan contends that each of the defendants was involved in operating the festival and that each may be held liable for failing to prevent or stop the assault. Milligan raises claims under Wisconsin's common law of negligence and Wis. Stat. § 101.11, the safe-place statute. Defendants filed a third-party complaint against Anthony Runde, who defendants allege was "the principle assailant" against Milligan. Dkt. 17, ¶ 3.

Two related motions are before the court: (1) defendants' motion to exclude the testimony of Milligan's expert, Dkt. 85; and (2) defendants' motion for summary judgment, Dkt. 87. Also before the court is defendants' motion to conduct a second deposition of Anthony Runde. Dkt. 134.

The court will grant defendants' motion to exclude the expert's testimony. I consider the expert to be qualified in the field of event security, but his opinions are highly conclusory. For reasons explained more fully in this opinion, he does not show how he arrived at his conclusions based on his analysis of the conditions at the festival, nor does he show how the alleged deficiencies in security relate to the assault. Without the expert's opinions, Milligan does not have admissible evidence that defendants' conduct fell below a standard of care or that defendants' actions or failure to act were a substantial factor in causing his injuries. Accordingly, I will also grant defendants' motion for summary judgment.

Defendants' claims against Runde are contingent on a finding of liability against defendants, so granting their summary judgment motion moots their claims against Runde, along with the motion for leave to depose him.

BACKGROUND

The court can provide few facts about the background of this case because neither side provided them in admissible form. Milligan's 14 proposed findings of fact do not discuss the assault or the events leading up to it. Rather, Milligan's proposed facts focus on defendants' alleged negligence and the legal relationship between the different defendants. Defendants provide a narrative, but they rely mostly on unsworn statements made to the police in 2013, which are not admissible because they are hearsay. The court will discuss other evidence cited

2

by the parties as it becomes relevant in the context of the opinion. The Rock on the River music festival took place on July 13, 2013, in Bridgeport, Wisconsin. The festival was operated by defendant Rock on the River, Inc., a corporation formed by Scott B. Sheckler, who is not a defendant. Scott B. Sheckler also formed defendant Country on the River, Inc., which operated an annual music festival from 2010 to 2014. Defendants Scott L. Sheckler and Jill Sheckler are Scott B. Sheckler's parents and they are the beneficiaries of a trust that owns the land where both festivals were held. Scott L. Sheckler and Jill Sheckler are former owners of defendant Sheckler Management Inc.

The festival grounds for Rock on the River were approximately 98 acres divided up into a 1000 foot by 1000 foot music venue with the remaining area set aside for parking lots and a campground. Approximately 2,000 people attended the festival.

Jaden McCullick, a lieutenant for the Crawford County Sheriff's Department, coordinated the security presence at the festival with organizer Scott B. Sheckler. Twenty-nine law enforcement officers patrolled the festival grounds, including in the campground.

Joshua Milligan attended the Rock on the River festival. At an unspecified time, Milligan was assaulted in the camping area of the festival, near the porta potties.

ANALYSIS

**A. Jurisdiction**

The parties have responded to the court's order to supplement the record with evidence showing that subject matter jurisdiction is present under 28 U.S.C. § 1332, which requires diversity of citizenship between plaintiffs and defendants and an amount in controversy greater than $75,000. Although it is reasonable to infer that more than $75,000 is at stake, the court

needed additional information because the parties' proposed findings of fact failed to cite evidence of the parties' citizenship. Dkt. 139.

The parties' supplemental materials show that: (1) Joshua Milligan is a citizen of Iowa; Dkt. 147[1]; and (2) all of the original defendants are citizens of Wisconsin, Dkts. 143–45, with the exception of Sheckler Management, Inc., which is a citizen of Florida, Dkt. 143. Thus, Milligan and defendants have diverse citizenship and the court may exercise jurisdiction under § 1332.

Although third-party defendant Runde appears to be a citizen of Iowa, Dkt. 137 (Runde Dep. 9:11–14), the court may exercise supplemental jurisdiction over a claim brought by a defendant against a third-party defendant without destroying diversity jurisdiction. *Abbott Labs. v. CVS Pharm.*, Inc., 290 F.3d 854, 858 (7th Cir. 2002) ("[S]upplemental jurisdiction [is] capacious enough to include claims by or against third parties."). "The only party denied a back door claim against third-party defendants is the original plaintiff if they are non-diverse." *R & M Fleet Servs., Inc. v. Caribbean Truck & Equip. Co.*, No. 12-cv-411, 2013 WL 5754923, at *3 (N.D. Ind. Oct. 23, 2013) (citing *Aurora Loan Svcs., Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006)).

## B. Overview of the claims and the parties' contentions

### 1. Legal theories

Milligan contends that defendants' negligence caused his injuries, in violation of both the common law and Wisconsin's safe-place statute, Wis. Stat. § 101.11. To prove a common law negligence claim, a plaintiff must show: "(1) A duty of care on the part of the defendant;

---

[1] Under 28 U.S.C. § 1332(c)(2), the citizenship of Susan Thomas (Milligan's guardian) is the same as Milligan's.

(2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995). In Wisconsin, everyone owes a duty "to the world at large," *Hornback v. Archdiocese of Milwaukee*, 313 Wis. 2d 294, 309, 752 N.W.2d 862 (quoting *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 103 (1928) (Andrews, J., dissenting)), whenever it is "foreseeable that his act or omission to act may cause harm to someone." *Rolph v. EBI Companies*, 159 Wis. 2d 518, 532, 464 N.W.2d 667, 672 (1991) (citation omitted). The defendant breaches this duty of ordinary care if it, "without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." *Alvarado v. Sersch*, 2003 WI 55, ¶ 14, 262 Wis. 2d 74, 662 N.W.2d 350 (quoting Wis JI–Civil 1005). "One is causally negligent when his or her conduct is a substantial factor in causing injury to another." *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 47, 309 Wis. 2d 541, 749 N.W.2d 581.

Under the safe-place statute, "[e]very employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe." Wis. Stat. § 101.11(1). "The safe place statute does not create a distinct cause of action, but provides a higher duty than the duty of ordinary care regarding certain acts by employers and owners of places of employment or public buildings." *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶ 20, 291 Wis. 2d 132, 146, 715 N.W.2d 598, 605. The word "safe" does not mean "completely free of any hazards." *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 10, 274 Wis. 2d 162, 682 N.W.2d 857. Rather, the question is "whether the defendant was

negligent in not maintaining a premise in as safe a condition as the nature thereof would reasonably permit." *Wittka v. Hartnell*, 46 Wis. 2d 374, 385, 175 N.W.2d 248, 254 (1970).

The statute protects both employees and "frequenters" of a place of employment. Wis. Stat. § 101.11(1). In this case, there is no dispute that the assault occurred at a place of employment and that Milligan was a frequenter.

A claim under the safe-place statute has three elements: (1) there was an unsafe condition associated with the structure of the place of employment; (2) the unsafe condition caused the plaintiff's injury; and (3) the defendants had either actual or constructive notice of the unsafe condition before the injury occurred. *Hofflander v. St. Catherine's Hosp., Inc.*, 2003 WI 77, ¶ 89, 262 Wis. 2d 539, 593, 664 N.W.2d 545, 571–72.[2]

### 2. The parties' contentions

Milligan does not clearly lay out in one place what he believes are defendants' acts of negligence and the unsafe conditions that defendants caused. In his amended complaint, Milligan says only that defendants acted unreasonably "by failing to provide sufficient security." Dkt. 4, ¶ 37. The report of Milligan's security expert, Russell Kolins, lists more than a dozen "negligent and reckless acts," Dkt. 56, at 3, but Milligan does not discuss most of those in either his brief or proposed findings of fact. The court will limit its consideration to the issues that Milligan discusses in his brief: (1) defendants failed to provide security at the location where the assault occurred; (2) defendants failed to provide adequate lighting at the

---

[2] Notice is required for unsafe conditions "associated with the structure," but not for "structural defects." *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 22, 245 Wis. 2d 560, 570, 630 N.W.2d 517, 522. Milligan does not contend that the festival grounds had any "structural defects," so the court assumes as the parties do that notice was required.

location where the assault occurred; and (3) the porta potties near the incident "blocked the line of sight." Dkt. 117, at 7.

Defendants seek summary judgment on the following grounds: (1) Kolins's opinions are not admissible and, without those opinions, no reasonable jury could find that defendants acted negligently or caused Milligan's injuries; (2) the assailant's conduct was a "superceding or intervening cause" of Milligan's injuries; (3) defendants did not have actual or constructive notice of a safety defect; and (4) those defendants other than Rock on the River, Inc. did not own, operate or otherwise have any control over the music festival.[3]

All of these contentions have merit, but the court need not resolve all of them because the court is persuaded that Kolins's opinions are not admissible under the Federal Rules of Evidence and that without Kolins's testimony, no reasonable jury could find that any of the defendants acted negligently or caused Milligan's harm. The court will first consider the evidence related to the security defendants provided, followed by evidence related to the lighting where the assault occurred, and conclude with evidence regarding placement of the porta potties. Because the court need not address the question of which defendants were

---

[3] Defendants raise two other issues in their opening brief: (1) they cannot be held liable for the sale of alcohol to Milligan or Runde under Wis. Stat. § 125.035; and (2) the owner of the land where the festival was held has recreational immunity under Wis. Stat. § 895.52. Dkt. 89, at 25. As to the first issue, Milligan's expert discusses issues related to alcohol in his report, but Milligan does not respond to defendants' argument regarding § 125.035 in his opposition brief and he includes no proposed findings of fact about the sale of alcohol to him or Runde. As a result, that issue is forfeited and the court will disregard Kolins's opinions that defendants' sale of alcohol was negligent. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir.2010) ("Failure to respond to an argument . . . results in waiver"). As to the second issue, it is undisputed that the owner of the land is not a party to the case and defendants do not develop an argument that *they* have recreational immunity, so the court has disregarded that argument.

7

responsible for keeping the festival safe, the court will assume for the purpose of the pending motions that all of them were equally responsible.

## C. Security

### 1. Common law negligence

#### a. Expert opinion

Milligan relies on the opinions of security consultant Russel Kolins to support the contention that defendants acted negligently. Defendants say that Kolins's opinions do not meet the requirements for admissibility under the Federal Rules of Evidence, and that without those opinions, no reasonable jury could find in Milligan's favor.

Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993), a federal court may not consider the opinions of an expert before determining that the expert is qualified, that the expert's opinions are based on reliable methods and reasoning, and that the expert's opinions will assist the jury in deciding a relevant issue. *Myers v. Ill. Cent. R. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).[4] Defendants do not challenge Kolins's qualifications to offer opinions about security, but they question whether his opinions are both reliable and useful. The court will limit its consideration to the opinions relevant to defendants' motion for summary judgment.

In the summary of his expert report, Kolins provides a number of opinions that could be viewed as related to the security issues Milligan discusses in his brief and proposed findings of fact. Kolins states that defendants were "negligent and reckless" by "[f]ailing to provide

---

[4] "Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, (1993), govern the admission of expert testimony in federal courts, even when [the court's] jurisdiction rests on diversity." *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015).

8

control and management of the premises," "[f]ail[ing] to properly supervise the premises," "[f]ailing to control the orderly behavior of guests," "[f]ailing to provide adequate security at the event," "[f]ailing to properly instruct and give directions to security," and "[f]ailing to provide adequate number of police and security officers inside premises." Dkt. 56, at 3. In another part of his report, he offers the opinion that defendants "failed to reasonably deploy an adequate number of security officers to show a presence in all areas accessible to foot traffic, particularly in the area of the Porta Potties." *Id.* at 16–17.

Most of these opinions are provided at such a high level of generality that is impossible to determine from them what Kolins believes that defendants should have done differently or, in other words, how defendants breached their duty to Milligan. Such conclusory opinions would not be useful to the jury. *National Diamond Syndicate, Inc. v. United Parcel Service, Inc.*, 897 F.2d 253, 260 (7th Cir. 1990) ("[I]f the affiant offers an expert opinion, she must give reasons for the opinion, and not merely state her conclusions.").

Kolins's only opinion that identifies a particular defect is that defendants failed to provide a sufficient number of security officers. But Kolins provides no basis for that opinion. In fact, he appears to contradict it elsewhere in the report when he says that "[t]he International Association of Venue Managers, Trained Crowd Management accepted best practices recommends at least one security staff per 250 events attendees." Dkt. 56, at 21. There were approximately 2,000 attendees at the festival and 29 officers patrolling the festival grounds, providing a ratio of 1 officers for every 86 attendees, nearly three times the recommended number.[5]

---

[5] Kolins includes a sentence in his report that, "According to invoice # 130710 RotR, only 12 security guards and one supervisor were on duty at the time of the criminal assault on Mr. Milligan." Dkt. 56, at 16. That document is not attached to the report and Milligan does not

9

Kolins qualifies his statement by saying that the recommendation of the association "applies only to an open general admission setting where there is easy observation of a group of people from a higher vantage point. Every venue is as different as a fingerprint which requires attention to areas different that other venues. A property such as in this matter, requires more that the general ratio guidelines." *Id.* But Kolins does not support that opinion. He does not identify what he believes the ratio should be for "[a] property such as in this matter," and he does not state that a ratio of 1 to 86 was insufficient for the event at issue in this case.

This leaves Kolins's opinion that defendants were negligent because officers were not present at the exact location where the assault occurred. But, again, Kolins did not support that opinion. Although Kolins discusses a number of different security standards in his report, he does not cite any suggesting that the standard of care requires security staff to be in all places at all times. *Hopkins v. Connecticut Sports Plex, LLC*, No. CV044002547S, 2006 WL 1738369, at *9 (Conn. Super. Ct. June 9, 2006) ("The cases make clear that the operator [of a place of business] has no duty to assign a guard or security person to every patron that enters its premises."); *Corbitt v. Ringley-Crockett, Inc.*, 496 S.W.2d 914, 918–19 (Tenn. Ct. App. 1973) ("It is an easy thing to say after the fact that a guard should have been at a certain place and at a certain time, but the owner is not charged with a duty to be clairvoyant.").

It is undisputed that the assault occurred *outside* the gates to the music venue in an area designated for camping. Dkt. 56, at 16 (assault occurred in "campground area"); Dkt. 97 (Kolins Dep. 224:19–225:4) (camping area is "a ways" from gate to concert; "could be" 50–75

---

discuss or cite it in his proposed findings of fact, so the court will disregard this sentence in the report. Milligan also attempts to dispute defendants' proposed finding of fact related to the number of security officers at the festival, but he does not cite any contrary evidence. Dkt. 129, ¶ 79.

yards away). Although Kolins acknowledges that fact in his deposition, he does not account for it in his report and he does not provide any support for a view that the standard of care would require security staff to be present near the bathrooms in a camping area adjacent to the concert venue at the time the assault occurred. For example, Kolins does not say that the assault occurred at a time when security staff would have had any reason to believe that a significant number of people were in the camping area. In fact, one witness testified that the concert was either still going or had just ended when he witnessed the assault occurring. Dkt. 97-6 (Meier grand jury testimony 275:4–276:4). Milligan cites no contrary evidence. Regardless, on a motion for summary judgment, it is the plaintiff's burden to prove his claim, not the defendant's burden to disprove it. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). In the absence of an explanation from Kolins why security staff should have anticipated problems in the camping area at the time of the assault, Kolins's opinion that defendants failed to provide adequate security is not helpful.

In short, Kolins's opinions are simply conclusions that are not tied to any data. *Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015) ("A court should not 'admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.'") (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 880–81 (7th Cir. 2011) ("Mere conclusions, without a hint of an inferential process, are useless to the court.") (internal quotations omitted). That is the key difference between Kolins's opinions and the opinions of the expert in the case that Milligan cites. *Childress v. Kentucky Oaks Mall Co.*, No. 06-cv-54, 2007 WL 2772299, at *4 (W.D. Ky. Sept. 20, 2007) ("[The expert] has explained the means by which he reached his conclusions and provided a basis for his conclusions."). Regardless whether Kolins is qualified to testify about security

matters and whether the standards he cites are reliable under *Daubert*, his failure to explain how the standards support his security opinions renders his opinions inadmissible.

### b. Other evidence of negligence

The parties debate whether expert testimony is needed in this case to prove that defendants' security measures were inadequate. But even if expert testimony is not required in this case, the other evidence Milligan cites is not sufficient to defeat defendants' motion for summary judgment. First, Milligan cites testimony from Jaden McCullick (the festival's security coordinator) that 95% of the concert attendees were drunk and that fights had occurred at the 2012 Country on the River festival. Dkt. 98 (McCullick Dep. 19:13–20:24, 54:15–20). There are a number of reasons why that testimony has limited probative value: McCullick does not provide any foundation for his conclusion regarding the number of intoxicated attendees; Country on the River had more than ten times as many attendees as Rock on the River, Dkt. 129, ¶ 74; and McCullick does not say how many fights occurred at Country on the River or how serious any of them were. But even if most people at the concert were intoxicated and defendants had notice that fights might occur at Rock on the River, this would show that defendants should hire security, which is exactly what they did. And as discussed above, Milligan has not adduced any evidence that the amount of security at the concert was deficient or that defendants had any reason to believe that the camping area needed to be patrolled at the time the assault took place. It is undisputed that McCullick was not aware of any problems that had occurred in that area before, *id.* ¶ 82, and Milligan does not identify any problems of which McCullick should have been aware.

Second, Milligan says in his brief and proposed findings of fact that defendants did not have "a policy for ejecting intoxicated and disorderly attendees." Dkt. 130, ¶ 4 and Dkt. 117,

at 6 n.3. Defendants deny this, but even if it is true, it is irrelevant because Milligan does not allege either that the person who assaulted him was intoxicated during the assault or that the assailant had engaged in any behavior before the assault that should have led to his ejection from the festival. More generally, Milligan does not allege that defendants or their security staff had any notice of a potential altercation between Milligan and anyone else. *Compare Pfeifer v. Standard Gateway Theater*, 259 Wis. 333, 336–37, 48 N.W.2d 505, 507 (1951) (movie theater owner could be held liable for injury to patron caused by other patrons in light of evidence that other patrons had been engaging in disruptive behavior in theater "for some time" before the injury occurred, so "the attendants might, in the exercise of reasonable care, have so controlled the behaviour of the boys as to have prevented injury to the other patrons of the theater"), *with Emerson v. Riverview Rink & Ballroom*, 233 Wis. 595, 290 N.W. 129, 131 (1940) (owner of roller-skating rink could not be held liable for injury caused to one patron by other patrons because there was "no evidence from which it could be concluded that [the other patrons'] manner of skating was such as should have attracted the attention of the guards and resulted in intervention prior to the accident").

Third, Milligan says in his proposed findings of fact that "[s]ecurity stations were strategically placed throughout the venue to provide security for the venue's assets and performers, and not positioned with the safety of the concert-goers in mind." Dkt. 130, ¶ 6. Milligan cites Kolins's deposition testimony to support this statement, but the cited testimony does not address the issue of the placement of the security stations and Milligan does not otherwise explain how he believes the stations should have been placed differently.

In sum, Milligan has failed to adduce any evidence, expert or otherwise, that defendants failed to exercise ordinary care in the context of providing security at the festival.

13

## 2. Safe-place statute

Milligan's claim under the safe-place statute also fails as a matter of law. First, there is no dispute that Milligan must point to "an unsafe condition *associated with the structure*" of the place of employment. *Hofflander*, 2003 WI 77 at ¶ 89 (emphasis added). The statute does not apply to "negligent or inadvertent [a]cts of employees or [a]ctivities conducted on the premises." *Leitner v. Milwaukee Cty.*, 94 Wis. 2d 186, 193–95, 287 N.W.2d 803, 807 (1980). Because Milligan's claim regarding the security at the festival relies on the premise that defendants failed to provide adequate supervision and not on a physical or structural deficiency, Milligan cannot prevail under § 101.11.

Milligan says that his claim regarding inadequate security relates to a "premises defect" because he is challenging the placement of "security stations" throughout the festival. Dkt. 117, at 6. But he does not identify any structures associated with those stations, let alone any defects associated with their structure. In any event, even if the security stations were structures, Milligan has not identified any way in which the placement of the stations made the festival unsafe, as discussed above.

## D. Lighting

Kolins states multiple times throughout his report that he believes that there was insufficient lighting around the area where the assault occurred, Dkt. 56, at 3, 17, 18, 22, but he does not explain that opinion. In his proposed findings of fact, Milligan cites Kolins's deposition testimony for the proposition that "[t]he closest light to where Mr. Milligan was attacked is identified by manufacturer specifications to be a reflection light that generates 1.5 foot-candles of light." Dkt. 130, ¶ 1. But Milligan neither provides foundation for that opinion

nor explains its significance. Defendants also object to any testimony by Kolins about lighting on the ground that he is not qualified to give opinions about that issue.

Even if the court sets aside all of the objections to Kolins's opinions about lighting, any claim about inadequate lighting fails because Milligan has not adduced any evidence that inadequate lighting was a factor that led to the assault. Milligan contends that better lighting could have deterred the attack or allowed it to be detected sooner, but he does not support that contention with any evidence. Under both the common law and the safe-place statute, Milligan must adduce evidence of causation, *Hofflander*, 2003 WI 77, at ¶ 89; *Rockweit*, 197 Wis. 2d at 418, 541 N.W.2d at. 747, so defendants are entitled to summary judgment on this aspect of Milligan's claim.

### E. Placement of porta potties

In his brief and proposed findings of fact, Milligan cites the following testimony by Kolins: "[The witness] would not have been able to see. Look at the photographs that I took. You can see that line of sight. That was one of the important reasons for a site inspection to develop the lines of sight." Dkt. 97 (Kolins Dep. 226:22–227:1). Relying on that testimony, Milligan says that "several porta-potties were placed by the Defendants such that they blocked the line of sight and only available light where the attack occurred." Dkt. 130, ¶ 6.

This claim fails as a matter of law for multiple reasons, both under common law and the safe-place statute. First, in the testimony Milligan cites, Kolins is not purporting to offer an opinion about whether the placement of the porta potties was unreasonable or unsafe. Rather, he is simply making an observation about what he believes a particular witness would and would not be able to see from a particular vantage point. Second, even if Kolins were purporting to offer an opinion, the court could not consider it because Kolins says nothing

about the placement of the porta potties in his report. *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony."). Third, Kolins does not offer any support for a conclusion that there was anything unreasonable about the placement of the porta potties. Finally, Milligan does not cite any evidence that the placement of the porta potties was a factor in causing the assault. For all of these reasons, defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Defendants' motion to exclude the opinions of Russell Kolins, Dkt. 85, is GRANTED.

2. Defendants' motion for summary judgment, Dkt. 87, is GRANTED.

3. Defendants' motion for leave to depose Anthony Runde, Dkt. 134, is DENIED as moot.

4. Defendants' third-party claim against Runde is DISMISSED as moot.

5. The clerk of court is directed to enter judgment accordingly and close this case.

Entered December 29, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge